**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>Free Speech Systems, LLC,<br><br>     Debtor | Chapter 11<br><br>Bankruptcy Case No. 22-60043 |
| Free Speech Systems, LLC,<br><br>     Plaintiff<br><br>     v.<br><br>PQPR Holdings Limited LLC, JLJR Holdings, LLC,<br>PQPR Holdings, LLC, PLJR Holdings, LLC,<br>JLJR Holdings Limited, LLC, AEJ Holdings, LLC,<br>AEJ Trust 2018, Carol Jones, and David Jones,<br><br>     Defendants | Adversary No. 23-03127 |

**JOINT MOTION OF THE SANDY HOOK FAMILIES FOR ENTRY**
**OF AN ORDER PURSUANT TO FEDERAL RULE 24 AND BANKRUPTCY**
**RULE 7024 PERMITTING INTERVENTION IN PQPR ADVERSARY PROCEEDING**

> **This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.**

> **Represented parties should act through their attorney.**

The Connecticut Plaintiffs[1] and the Texas Plaintiffs[2] (together, the "Sandy Hook Families"), by and through their undersigned counsel, file this motion (the "Motion") for

---

[1] The "Connecticut Plaintiffs" are Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, and Robert Parker.

intervention as of right, or in the alternative, permissive intervention, in the above-captioned adversary proceeding.  The Sandy Hook Families respectfully represent as follows in support of the Motion:

## PRELIMINARY STATEMENT

1.      The Sandy Hook Families are the largest unsecured creditors of the Debtor's estate by orders of magnitude.  The Sandy Hook Families' primary interests include maximizing their recoveries, in part by monitoring and limiting the imposition of security interests on the Debtor's assets and ensuring that potential estate causes of action are not released unnecessarily. In addition, the Sandy Hook Families' interests include preserving direct claims against PQPR Holdings Limited LLC, JLJR Holdings, LLC, PQPR Holdings, LLC, PLJR Holdings, LLC, JLJR Holdings Limited, LLC, AEJ Holdings, LLC, AEJ Trust 2018, Carol Jones, and David Jones. Each is a named defendant in the PQPR Adversary Proceeding. [3]  This proceeding may therefore implicate such direct claims.  Thus, the Sandy Hook Families seek intervention into the PQPR Adversary Proceeding to properly protect their interests.

2.      The Sandy Hook Families satisfy the applicable legal standard for mandatory intervention under Federal Rule 24.  As more fully set forth below, the Motion is timely; the Sandy Hook Families hold interests relating to the property at issue; any disposition or settlement of the PQPR Adversary Proceeding may dilute, delay, or, at worst, foreclose the Sandy Hook Families' collective ability to recover funds from FSS, PQPR, or other potential defendants; and the Debtor does not adequately represent the Sandy Hook Families' interests in protecting against these risks.

---

[2]  The "Texas Plaintiffs" are Neil Heslin, Scarlett Lewis, Leonard Pozner, Veronique De La Rosa, and the Estate of Marcel Fontaine.  For purposes of this Motion, Marcel Fontaine is one of the "Sandy Hook Families" for ease of identification, but his claims against the Debtor are distinct and not "Sandy Hook" related.

[3]  Capitalized terms used but not defined in this Preliminary Statement shall share the meanings ascribed to them elsewhere in the Motion.

3.      In the alternative, the Sandy Hook Families also satisfy the applicable legal standard for permissive intervention.  No undue delay or prejudice will result from the Sandy Hook Families' intervention, and the factual and legal issues that FSS, PQPR, and the Sandy Hook Families will litigate overlap and are substantially similar in character.

## RELIEF REQUESTED

4.      By this Motion, the Sandy Hook Families respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made applicable by rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are section 1109(b) of the Bankruptcy Code and Federal Rule 24, as made applicable by Bankruptcy Rule 7024.

## RELEVANT BACKGROUND

6.      Free Speech Systems LLC ("FSS" or the "Debtor") was formed on November 16, 2007, as a limited liability company ("LLC").  Alexander E. Jones ("Jones") is its sole member.  FSS primarily operates as a platform for broadcasting Jones's programming under the "InfoWars" trademarks.

7.     In the fifteen (15) years following its formation, FSS generally did not observe corporate formalities.[4]  Jones and members of his family hold interests in a number of entities that have done business with FSS, including but not limited to PQPR Holdings Limited LLC ("PQPR").  According to the Trustee Report, these kinds of affiliate transactions form a "pattern."

8.     Two such transactions occurred on August 13, 2020, and November 10, 2020.  On those dates, the Debtor executed promissory notes to PQPR (together, the "Putative PQPR Debt").[5]  The August 13, 2020 and November 10, 2020 notes were in the amounts of $29.588 million and $25.30 million, respectively.

9.     On July 29, 2022, FSS filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code before this Court.

10.    On July 14, 2023, FSS filed its complaint in the above-captioned adversary proceeding (the "PQPR Adversary Complaint" and such proceeding, the "PQPR Adversary Proceeding").  The PQPR Adversary Complaint alleges that the Putative PQPR Debt should neither retain payment priority senior to, nor *pari passu* with, other FSS creditors' claims, including the Sandy Hook Families' claims.

11.    These allegations bear directly on the Sandy Hook Families' priority and practicability of payment in this chapter 11 case.

12.    Earlier, on March 10, 2023, pursuant to section 523 of the Bankruptcy Code and Bankruptcy Rules 4007, 7001(6), and 7001(9), the Sandy Hook Families commenced parallel adversary proceedings (together, the "Non-Dischargeability Adversary Proceedings") by filing

---

[4]  The subchapter V trustee in this chapter 11 case, Melissa M. Haselden, has also filed a comprehensive report that reaches this conclusion.  *See generally* Subchapter V Trustee's Initial Findings of Free Speech Systems, LLC Investigation [Docket No. 549] (the "Trustee Report").

[5]  The Trustee Report reaches a substantially similar conclusion regarding the Putative PQPR Debt.

parallel complaints (together, the "Non-Dischargeability Adversary Complaints") against each of FSS and Jones asserting the non-dischargeability of the debts owed by the Debtor to the Sandy Hook Families on account of the State Court Judgments.[6]  Together, the State Court Judgments comprise nearly $1.5 billion in awards of compensatory and punitive damages.[7]

## ARGUMENT

### I.    Intervention as of Right Is Warranted

13.    In order to intervene as of right pursuant to Federal Rule 24(a)(2), an intervenor must satisfy four requirements:

> (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Brumfield* v. *Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quoting *Sierra Club* v. *Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994).  The test for intervention of right "is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards* v. *City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).  Thus "intervention of right must be measured by a practical rather than technical yardstick." *Id.*  The Fifth Circuit has repeatedly recognized that "[f]ederal courts should allow intervention where no one would be hurt and the

---

[6]  The "State Court Judgments" are *Heslin* v. *Jones*, Cause No. D-1-GN-18-001835, in the 261st District Court of Travis County, Texas, Notice of Final Judgment [Docket No. 382, Ex. 1] (Jan. 13, 2023); *Lafferty* v. *Jones*, Case No. UWY-CV18-6046436-S, in the Judicial District of Waterbury of the Connecticut Superior Court, Judgment on Verdict for Plaintiffs [Docket No. 509, Ex. A] (Oct. 12, 2022) and Memorandum Decision on Punitive Damages [Docket No. 509, Ex. B] (Nov. 10, 2022); and *Pozner* v. *Jones*, Cause No. D-1-GN-18-001842, in the 261st District Court of Travis County, Texas, Amended Order on Plaintiffs' Motion to Compel and Motion for Sanctions (Oct. 15, 2021).

[7]  By that certain *Stipulated and Agreed Order Abating FSS Adversary Proceedings* [Adv. Docket No. 39], the Debtor and the Sandy Hook Families agreed to abate the Non-Dischargeability Adversary Proceeding until the earlier of fourteen (14) days after the United States Court of Appeals for the Fifth Circuit issues a decision in, or declines to hear, the appeal certified on February 2, 2023, and docketed as Case No. 23-50237.  *See Avion Funding* v. *GFS Industries*, No. 23-50237, Briefing Notice [Docket No. 25] (5th Cir. May 16, 2023).

greater justice could be attained."  *See John Doe No. 1* v. *Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (quoting *Sierra Club* v. *Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).  These standards are satisfied here.

14.     *First*, the Motion is timely.  It was filed shortly after the PQPR Adversary Complaint was docketed.  *See, e.g.*, *Cuevas* v. *BAC Home Loan Servicing, LP*, 2013 WL 237817, at *2 (S.D. Tex. Jan. 22, 2013) ("[T]he motion to intervene was filed . . . the very same day that Plaintiffs filed their motion . . . [I]n other words, the length of time involved could not have been shorter.").  The Debtor was aware of the Sandy Hook Families' intention to intervene in advance of the filing of the Motion, providing the parties to this proceeding with both adequate notice and opportunity to address any unique issues raised by the Sandy Hook Families' participation in the PQPR Adversary Proceeding.  Moreover, the Debtor cannot be prejudiced by the Sandy Hook Families' intervention because both the Debtor and the Sandy Hook Families likewise seek to deny any priority of payment with respect to the Putative PQPR Debt.

15.     Accordingly, the Sandy Hook Families' intervention will not cause any delay, inefficiency, or prejudice in the PQPR Adversary Proceeding.  Conversely, as discussed further below, the Sandy Hook Families may suffer prejudice if their interests are not adequately represented.  *See, e.g.*, *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 249–50 (5th Cir. 2009) (reversing district court's denial of motion to intervene because, among other things, "[d]enying . . . intervention would certainly cause prejudice to" the prospective intervenor).

16.     *Second*, the Sandy Hook Families hold "an interest relating to the property" that is "the subject of the action."  *Brumfield*, 749 F.3d at 341; *see also Espy*, 18 F.3d at 1207 ("[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.").  The Debtor

owes the Sandy Hook Families almost $1.5 billion on account of the State Court Judgments, and the Sandy Hook Families comprise the largest creditor constituency in this chapter 11 case by several orders of magnitude.

17.     In addition, the Sandy Hook Families have participated actively throughout this chapter 11 case, including in the hearing that led the Court to expand the scope of the subchapter V trustee's duties.  This order led directly to the Trustee Report, whose conclusions form the basis for the allegations in the PQPR Adversary Complaint.  The Sandy Hook Families will hold an ongoing, cognizable property interest in FSS at least throughout the life of this chapter 11 case.

18.     Furthermore, by virtue of this chapter 11 case's status as a subchapter V proceeding, it is likely that the Debtor will premise any plan of reorganization on completion of a multi-year payment plan.  The Sandy Hook Families will hold an interest in these payments for the duration of any such multi-year plan.  These circumstances weigh strongly in favor of granting the Motion because a sufficient interest lies where "the intervenor claims an identifiable interest in funds that are the subject of the litigation."  7C Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 1908.1 (3d ed.); *see, e.g.*, *In re Lease Oil Antitrust Litig.*, 570 F.3d at 251; *Gaines* v. *Dixie Carriers, Inc.*, 434 F.2d 52 (5th Cir. 1970).

19.     *Third*, the "disposition of the [PQPR Adversary Proceeding] may, as a practical matter, impair or impede" the Sandy Hook Families' ability to protect their interests.  *Brumfield*, 749 F.3d at 341.  If the Putative PQPR Debt is not soon stripped of any priority of payment without a settlement that releases valuable estate causes of action, then the Sandy Hook Families will be materially and adversely affected because their collective ability to recover funds from

FSS, PQPR, or other potential defendants will be diluted, delayed, or, at worst, foreclosed. *See, e.g.*, *Cuevas*, 2013 WL 237817, at *2.

20.     *Fourth*, the Debtor does not "adequately represent" the Sandy Hook Families' interests.  This minimal requirement "is satisfied if the applicant shows that the representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  *Trbovich* v. *United Mine Workers of Am*., 404 U.S. 528, 538 n.10 (1972).  Given the nature of the Sandy Hook Families' claims in this chapter 11 case and their long adverse history to the Debtor, the Debtor cannot adequately represent the interests of the Sandy Hook Families. Specifically, the Debtor's delay in bringing the claims and the fact that defendants include entities controlled by the Debtor's owner and relatives of the Debtor's owner call into question whether the Debtor will be incentivized to zealously litigate the claims.  Moreover, the Debtor's interests and the Sandy Hook Families' interests are not coterminous because the Debtor and the Sandy Hook Families are adverse parties in the Non-Dischargeability Adversary Proceedings. The outcome of the Non-Dischargeability Adversary Proceedings will dictate much in respect of the outcome in this chapter 11 case.

21.     In addition, the Sandy Hook Families are "staking out a position significantly different from" the Debtor's.  *See Brumfield*, 749 F.3d at 346.  Considering Alex Jones's and his family's ownership interest in PQPR, the Debtor and the Sandy Hook Families may be at odds over any willingness on the Debtor's part to settle with PQPR.  The Sandy Hook Families believe the Debtor may seek to settle in the interests of time and administrative convenience, regardless of the substantive validity of PQPR's claims and the unequivocal recommendations of the Trustee Report.  To the extent such a settlement countenances and grants any priority of payment to the Putative PQPR Debt, bargains away valuable estate causes of action, or in any

way prejudices the Sandy Hook Families' potential direct claims against these named defendants, the Sandy Hook Families would suffer harm.

22.     Also, to the extent such a settlement may stem from any mediation ordered by this Court in respect of the PQPR Adversary Proceeding, the Sandy Hook Families would seek to participate and have a voice in such mediation.  Participation is appropriate and aligns with precedent.  *Cf. In re Schepps Food Stores, Inc.*, 169 B.R. 374, 378 n.5 (Bankr. S.D. Tex. 1994) (noting a historic "practice" in the Bankruptcy Court for the Southern District of Texas "to screen for" and favor tort claimants' intervention and participation in mediation).

23.     Because the four requirements for intervention as of right are satisfied, the Court should grant the Motion on this basis.

## II.     Alternatively, Permissive Intervention Is Warranted

24.     If the Court concludes that intervention as of right is not appropriate, then the Sandy Hook Families respectfully move, in the alternative, for permissive intervention pursuant to Federal Rule 24(b)(1)(B), which authorizes the Court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  In exercising its discretion to grant or deny permissive intervention, the Court must consider only "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Permissive intervention thus requires no showing of an interest, the potential impairment of an interest, or inadequacy of representation.

25.     The Sandy Hook Families satisfy the standard for permissive intervention. As discussed above, intervention will neither delay nor prejudice any party to this proceeding. The outcome of the PQPR Adversary Proceeding may, however, delay or hinder payment to the Sandy Hook Families or the recoveries afforded to them in the broader context of this chapter 11 case.

## RESERVATION OF RIGHTS

26.     For the avoidance of doubt, the Sandy Hook Families reserve their rights to amend or supplement this Motion on any basis and reserve all rights and remedies with respect to the Motion and otherwise in the PQPR Adversary Proceeding and this chapter 11 case.

WHEREFORE, the Sandy Hook Families respectfully request that the Court enter the Proposed Order (a) providing for intervention as of right, or, in the alternative, permissive intervention under Federal Rule 24 and (b) granting such other relief as may be appropriate under the circumstances.

Respectfully submitted on this 21st day of July, 2023.


*/s/ Avi Moshenberg*
**MCDOWELL HETHERINGTON LLP**
Avi Moshenberg
State Bar No. 24083532
1001 Fannin Street, Suite 2700
Houston, TX 77002
Telephone: (713) 337-5580


*/s/ Jarrod B. Martin*
**CHAMBERLAIN, HRDLICKA,**
**WHITE, WILLIAMS & AUGHTRY, PC**
Jarrod B. Martin
State Bar No. 24070221
1200 Smith Street, Suite 1400
Houston, TX 77002
Telephone: (713) 356-1280


*/s/ Jennifer J. Hardy*
**WILLKIE FARR & GALLAGHER LLP**
Jennifer J. Hardy
State Bar No. 24096068
600 Travis Street
Houston, TX 77002
Telephone: (713) 510-1766

*-and-*


*/s/ Ryan E. Chapple*
**CAIN & SKARNULIS PLLC**
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, Texas 78701
Telephone: (512) 477-5000


**KOSKOFF KOSKOFF & BIEDER PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Telephone: (203) 336-4421


**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Martin J. Salvucci (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000

*Co-Counsel to the Connecticut Plaintiffs*

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
Ciara A. Sisco (admitted *pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
*Co-Counsel to the Texas Plaintiffs*

## CERTIFICATE OF CONFERENCE

The undersigned certifies that prior to filing this Motion a conference was held with Debtor's counsel on July 19, 2023.

*/s/ Martin J. Salvucci*
Martin J. Salvucci

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July 2023, a true and correct copy of the foregoing was served via the Court's ECF system to the parties registered to receive electronic service.

*/s/ Ryan E. Chapple*
Ryan E. Chapple