IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>FREE SPEECH SYSTEMS,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-60043 (CML) |
| FREE SPEECH SYSTEMS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS LLC, PLJR HOLDINGS LLC, AEJ AUSTIN HOLDINGS LLC, AEJ 2018 TRUST, CAROL JONES and DAVID JONES,<br><br>Defendants. | Adversary No. 23-03127 |

**DECLARATION OF JONATHAN C. DAY IN SUPPORT OF
THE SANDY HOOK FAMILIES' OPPOSITION TO
PQPR HOLDINGS LIMITED LLC'S, JLJR HOLDINGS LLC'S,
AND PLJR HOLDINGS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

JONATHAN C. DAY declares pursuant to 28 U.S.C. § 1746:

1. My name is Jonathan Day. I am over the age of twenty-one years and am fully competent to make this affidavit. I have personal knowledge of the facts stated in this affidavit, which are true and correct.

2. I am an attorney in the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"). I am counsel for Mark Barden, Jacqueline Barden, Francine Wheeler, David Wheeler, Ian Hockley, Nicole Hockley, Jennifer Hensel, William Aldenberg, William Sherlach, Carlos M. Soto, Donna Soto, Jillian Soto-Marino, Carlee Soto Parisi, Robert Parker, and Erica

Ash (the "Connecticut Families") in this action.

3. I submit this affidavit in support of the Sandy Hook Families' Memorandum of Law in Opposition (the "Opposition") to *PQPR Holdings Limited LLC's, JLJR Holdings LLC's, and PLJR Holdings LLC's Motion for Partial Summary Judgment* [Docket No. 44] (the "Motion") filed by PQPR Holdings Limited LLC ("PQPR"), JLJR Holdings LLC, and PLJR Holdings, LLC (collectively, the "Defendants").[1]

4. On December 5 and December 6, 2023, Avi Moshenberg of McDowell Hetherington LLP, counsel for the Texas Families, exchanged emails with Stephen Lemmon of Streusand, Landon, Ozburn, Lemmon LLP, counsel for PQPR, regarding the status of the above-captioned adversary proceeding. Mr. Lemmon indicated that the parties had not yet held a conference pursuant to Federal Rule of Civil Procedure 26(f); had not yet made initial disclosures pursuant to Federal Rule of Civil Procedure Rule 26(a)(1); and had not yet taken discovery. On December 11, 2022, Mr. Moshenberg followed up regarding the scheduling of the Federal Rule of Civil Procedure 26(f) conference. Attached hereto as Exhibit 1 is a true and correct copy of the foregoing email exchange.

5. During the week of March 18, 2024, the parties participated in conferences pursuant to Federal Rule of Civil Procedure 26(f).

6. On April 19, 2024, Defendants filed the Motion, along with accompanying Declarations of Robert Roe and David Jones.

7. On April 24, 2024, counsel for the Connecticut Families served on Defendants via email Requests for Production, a Notice of Deposition to Robert Roe, and a Notice of Deposition to David Jones. Attached hereto as Exhibit 2 is a true and correct copy of the Connecticut Families'

---

[1] Capitalized terms not defined herein have the meanings given to them in the Opposition.

Requests for Production; as Exhibit 3, a true and correct copy of the Connecticut Families' Notice of Deposition to Robert Roe; and as Exhibit 4, a true and correct copy of the Connecticut Families' Notice of Deposition to David Jones. Defendants have never served Responses or Objections to any of these discovery requests.

8. On April 29, 2024, my colleague, Paul Paterson of Paul, Weiss, counsel for the Connecticut Families, emailed counsel for the Defendants and asked when they anticipated beginning and completing the production of documents. Defendants did not respond. On April 30, 2024, following a status conference at which Mr. Lemmon represented that PQPR had previously made extensive document productions, Mr. Paterson emailed Mr. Lemmon and Steve Roberts, counsel for David Jones, asking for further information about those previously produced documents. On May 1, 2024, Mr. Lemmon indicated he would "go over the production logs" and revert with an answer that afternoon. Mr. Lemmon did not provide an answer that afternoon. Attached as Exhibit 5 is a true and correct copy of the foregoing email exchange.

9. On May 3, 2024, PQPR produced documents bearing Bates stamps PQPR_000129 through PQPR_001904.

10. On May 7, 2024, I emailed Mr. Lemmon and stated that PQPR's May 3, 2024 production did not satisfy the Connecticut Families' Request for Production, identifying particular Requests for Production that had not been satisfied. On May 8, 2024, Mr. Lemmon responded by asking me to identify the documents that PQPR had previously produced to the Unsecured Creditors' Committee that Paul, Weiss had access to. I responded that Paul, Weiss had access to documents bearing Bates stamps PQPR-UCC_000001 through PQPR-UCC_012592, but that those documents did not contain information responsive to the Requests for Production that I had previously identified. Attached as Exhibit 6 is a true and correct copy of the foregoing email

exchange.

11. On May 9, 2024, PQPR produced documents bearing Bates stamps PQPR_001905 through PQPR_002200.

12. On May 10, 2024, Mr. Paterson emailed Mr. Lemmon and asked whether PQPR had completed its production of documents responsive to the Connecticut Families' Requests for Production. Mr. Lemmon did not respond. Attached as Exhibit 7 is a true and correct copy of the foregoing email exchange.

13. On May 13, 2024, the day before Mr. Roe's scheduled deposition, I emailed Mr. Lemmon, stating that the Sandy Hook Families had still not received documents responsive to a number of document requests and asking whether PQPR intended to produce additional documents. I did not receive a response. Later that same day, I therefore sent a second email to Mr. Lemmon asking again whether PQPR intended to produce any additional documents. Mr. Lemmon responded in a later chain asking "what specific categories do you say you don't have." Mr. Paterson replied stating that PQPR had not produced documents responsive to numerous requests, which he identified by description and request number, which included documents concerning the Security Agreement and the alleged debt of $6.3 million. Mr. Paterson also asked defendants to represent that they had conducted a diligent search and completed the production of documents responsive to the Connecticut Families' Requests for Production. Mr. Lemmon did not respond. Attached as Exhibit 8 is a true and correct copy of the foregoing email exchange.

14. On May 14, 2024, Mr. Roe sat for deposition. Attached as Exhibit 9 is a true and correct copy of excerpts from the transcript of the deposition of Robert Roe, conducted on May 14, 2024.

15. On May 15, 2024, Dr. David Jones sat for deposition. Attached as Exhibit 10 is a

4

true and correct copy of excerpts from the transcript of the deposition of Dr. David Jones, conducted on May 15, 2024. Attached as Exhibit 11 is a true and correct copy of the document introduced as Exhibit 2 in the deposition of Dr. David Jones, conducted on May 15, 2024.

16. On May 15, 2024, at 4:20 p.m. ET, I emailed Mr. Lemmon to once again follow up on PQPR's deficient document productions, identifying particular Requests for Production that had not been satisfied, and particular materials that had not been received. I asked Mr. Lemmon, for the second time, to confirm when a reasonable search had been completed and when PQPR had finished producing documents responsive to the Connecticut Families' Requests for Production. Attached as Exhibit 12 is a true and correct copy of the foregoing email exchange.

17. Later that same day, at 8:04 p.m. ET, on a separate email chain, my colleague Daniel Negless of Paul, Weiss, emailed Mr. Lemmon and noted that Mr. Lemmon had not yet responded to my email. Mr. Lemmon responded by claiming that "we produced all the documents in our possession," that "many of the documents are in FSS' possession," and asked, "What specific documents are you talking about?"

18. Mr. Paterson promptly responded by directing Mr. Lemmon to our previous, unanswered emails identifying specific categories of documents that not been produced. Despite Mr. Paterson's direction, the next day, on May 16, Mr. Lemmon responded, "We believe we have produced everything but if you can describe what you think has not been produced that would be helpful," without acknowledging the specific categories of documents we had already identified.

19. Mr. Paterson promptly replied by again pointing Mr. Lemmon to our previous, unanswered emails identifying specific categories of documents that had not been produced. The next day, on May 17, 2024, Mr. Lemmon conveyed: "we believe the documents have all been produced by either Steve Roberts on behalf of David Jones or us on behalf of PQPR. Many of the

documents you ask about are in the possession of the debtor/plaintiff."

20. Mr. Paterson promptly replied by asking Mr. Lemmon to identify specific documents or Bates ranges supporting his general assertions, and noted that Mr. Lemmon had not, as previously requested on two occasions, represented that PQPR had conducted a diligent search or completed its production of documents. Two days later, on May 19, Mr. Lemmon responded with a picture of cardboard boxes. He stated that the cardboard boxes contained documents that "were copied by the creditors committee counsel." Attached as Exhibit 13 is a true and correct copy of the email exchange described by Paragraphs 17-20 of this Declaration.

21. Mr. Paterson promptly replied by confirming that Paul, Weiss had access to the referenced documents that were previously made available to the Unsecured Creditors' Committee and reiterated that those documents did not contain the previously identified categories of documents. Mr. Lemmon's response, in full, was: "Please explain."

22. Mr. Paterson promptly replied by reiterating that the documents did not contain the previously identified categories of documents and that Mr. Lemmon had not yet represented that PQPR had conducted a diligent search or completed its production of documents, despite repeated requests for such a representation. Several hours ago, at approximately 12:00 p.m. ET, Mr. Lemmon provided his first substantive response, representing that his team had conducted a diligent search of all documents in PQPR's possession and that certain of the Connecticut Families' document requests were satisfied by Bates ranges corresponding to documents produced to the Unsecured Creditors' Committee. Mr. Lemmon also indicated that PQPR would not produce at least one relevant category of information and would instead require the Sandy Hook Families to "come review it in person."

23. Mr. Paterson promptly replied that the documents Mr. Lemmon had identified did

6

not appear to adequately address PQPR's production deficiencies, but that, regardless, Mr. Lemmon's belated response did not allow for a reasonable evaluation before the filing of the Opposition. Attached as Exhibit 14 is a true and correct copy of the email exchange described by Paragraphs 21-23 of this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 20, 2024.

/s/ _____
Jonathan C. Day