UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re § | | |
| § | | |
| FREE SPEECH SYSTEMS, § | | Chapter 11 |
|     Debtor § | | Case No. 22-60043 (CML) |
| | | |
| FREE SPEECH SYSTEMS, LLC, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | |
| § | | Adv. No. 23-03127 |
| PQPR HOLDINGS LIMITED LLC, § | | |
| JLJR HOLDINGS LLC, PLJR § | | |
| HOLDINGS LLC, AEJ AUSTIN § | | |
| HOLDINGS LLC, AEJ 2018 TRUST, § | | |
| CAROL JONES and DAVID JONES, § | | |
|     Defendants. § | | |

**DEFENDANTS' RESPONSE TO**
**THE CONNECTICUT FAMILIES' MOTION FOR SUMMARY JUDGMENT**

Defendant PQPR Holdings Limited LLC ("PQPR") asks the Court to deny Connecticut Families' Motion for Summary Judgment (the "Motion") [ECF 61] because of at least two fatal pleading flaws, and/or, alternatively, because there are genuine issues of material fact that preclude judgment as a matter of law.

## I. INTRODUCTION

1. The Connecticut Families ("Movants") requested this Court grant summary judgment "with respect to Count V of the *Complaint* and recharacterize the *PQPR Claim* as equity." Motion at ¶ 37 (emphasis added). The "*PQPR Claim*" is defined as PQPR's Proof of Claim No. 11 in the amount of $68,154,691.46 filed in the Free Speech Systems LLC ("FSS") bankruptcy case (the "FSS Bankruptcy"). The "*Complaint*" Movants reference is the Amended Complaint [ECF 5] (the "FSS Complaint") filed by FSS against PQPR and others in this adversary case (the

"PQPR Adversary"). In Count V of the FSS Complaint, *FSS* requests judgment against PQPR and David Jones disallowing their claims pursuant to section 502(b) of the Bankruptcy Code.[1] FSS Complaint at ¶¶ 75-81. Count V does not request that any part of the PQPR Claim be recharacterized.

2. The first fatal flaw is that the Motion is moot, and the Court has no present jurisdiction to either disallow or recharacterize the PQPR Claim. The FSS Bankruptcy Case was dismissed on June 21, 2024 [FSS Bankruptcy ECF 956]. Thus, there is no bankruptcy estate and, by definition, no claims against it. The Motion should be denied on this basis alone.

3. The second fatal flaw is that Movants seek summary judgment on a claim they did not plead. In fact, Movants have not pled any causes of action – there is no live pleading in which Movants assert claims against PQPR (or others). Despite being granted leave to intervene, Movants never actually did so. In other words, Movants never filed a pleading asserting claims against Defendants as is required by the rules. Movants are not entitled to summary judgment on claims filed by another party.

4. Based on either of the aforementioned reasons alone, the Court must deny Movants' Motion. However, even if the Motion was not fatally flawed for those jurisdictional reasons, Movants cannot establish that recharacterization of PQPR's debt is warranted as a matter of law. The very existence of the debt, the Note and Security Agreement creates a fact issue precluding summary judgment. In addition, other facts exist that, at a minimum, establish a genuine issue of material fact sufficient to defeat Movants' Motion for Summary Judgment.

---

[1] FSS scheduled David Jones as a creditor with an unsecured claim in the amount of $150,000. The Motion and this Response pertains only to the PQPR Claim.

## II. MOVANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

### A. There is no PQPR Claim to disallow or recharacterize.

5. The FSS Bankruptcy Case was dismissed on June 21, 2024 [ECF 956]. Thus, there is no bankruptcy estate and, by definition, no claims against it. Allowance (or disallowance) of claims under Bankruptcy Code § 502 applies only in bankruptcy cases. *See In re Davison*, 186 B.R. 741, 742-43 (Bankr. N.D. Fla. 1995) ("actions that depend upon the existence of the bankruptcy" must be dismissed when the bankruptcy case is dismissed). Any cause of action against PQPR that depends on the existence of the FSS bankruptcy estate cannot survive dismissal of the FSS Bankruptcy.[2] Therefore, the Motion is moot and should be denied on this basis alone.

### B. Movants have not properly pled a claim for recharacterization against PQPR or others.

#### (i) Movants do not have live claims pending against PQPR.

6. On July 21, 2023, the "Sandy Hook Families" ("Intervenors"), defined as Movants together with the Texas Families, filed a joint motion to intervene (the "Intervention Motion") [ECF 2] in the PQPR Adversary with the primary objective to frustrate mediation efforts between PQPR and FSS. The Intervention Motion was not accompanied by a pleading that set out the claim(s) for which intervention was sought as required by Federal Rule of Civil Procedure 24, made applicable by Bankruptcy Rule 7024.[3] Nor did it adopt the claims set forth in the FSS

---

[2]  PQPR is not herein challenging the Court's ability to retain jurisdiction over adversary proceedings that involve claims that do not depend on the existence of the FSS Bankruptcy. In fact, PQPR has consented to the Court's retention of jurisdiction to adjudicate FSS's fraudulent transfer claims in the PQPR Adversary and Intervenors' claims in Adv. No. 22-3331, *Heslin, et al v. Alex Jones, et al.*

[3]  A motion to intervene must "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c); *In re SBMC Healthcare, LLC*, 519 B.R. 172, 185 (Bankr. S.D. Tex. 2014), aff'd, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017) ("Interpreting this rule, the Fifth Circuit has held that an intervenor must state a 'well-pleaded' claim."). In *In re SBMC*, the court found a motion to intervene was "woefully inadequate" because it failed to attach a proposed complaint and did not allege any causes of action against the defendants. *Id.* at 185. Strict compliance with the requirement to attach a pleading has been excused when the motion to intervene sufficiently puts the parties on notice of the grounds for intervention. *Liberty Surplus Ins. Cos. v. Slick Willies of Am., Inc.*, No. 07-0706, 2007 WL 2330294, at *1 (S.D. Tex. Aug. 15, 2007).

3

Complaint.[4]  Intervenors simply asserted that intervention was warranted to "properly protect their interests" in "monitoring and ensuring that potential estate causes of action are not released unnecessarily" and "preserving direct claims against [Defendants]."  Intervention Motion at ¶ 1.

7. The Court granted the Intervention Motion on November 28, 2023 [ECF 22] (the "<u>Intervention Order</u>").  The Intervention Order stated: "The Sandy Hook Families are authorized to intervene in the PQPR Adversary Proceeding, including for the avoidance of doubt, by participating in any mediation proceedings in respect thereof."

8. An order granting a motion to intervene effectively grants the intervenor leave to file a pleading asserting a claim or defense.  Although courts in the Fifth Circuit have held a failure to comply with Rule 24(c) by attaching a pleading to the motion to intervene is not fatal, once the motion is granted, the party intervening as a plaintiff must assert claims in a pleading or at a minimum adopt claims filed by the original plaintiff.  In the PQPR Adversary, Movants did not even bother to expressly adopt or incorporate the FSS Complaint in the Intervention Motion or subsequently.  While this Court granted the Intervention Motion despite Movant's failure to include a pleading setting out the claims, Movant was not excused from *ever* asserting specific claims for affirmative relief by filing a complaint or otherwise joining in FSS's complaint.  The fact is, Movants do not have any active claims on file in the PQPR Adversary.[5]  Yet, Movants are seeking summary judgment on Count V of the *FSS Complaint* – a cause of action Movants neither filed nor adopted in any way.  Not only is this procedurally insufficient, it is procedurally impossible.  For this reason alone, the Motion should be dismissed.

---

[4] *See Hill v. Day (In re Today's Destiny, Inc.)*, No. 06-3285, 2007 WL 2028111, at *4 (Bankr. S.D. Tex. July 6, 2007) (finding that strict compliance with Rule 24(c) was not fatal where "the parties objecting to the interventions clearly had notice of the intervening parties' intent and **had notice that the parties were planning on adopting some of the causes of action asserted in the Trustee's Second Amended Complaint**") (emphasis added).

[5] Movants actually have live fraudulent transfer claims against PQPR in Adv. No. 22-3331, *Heslin, et al v. Alex Jones, et al.*

*(ii)    There is no recharacterization claim pending against PQPR.*

9. There is no doubt Movants did not effectively assert affirmative claims against PQPR. However, even if the Court charitably determines the Movants have effectively adopted the FSS Complaint and, therefore, asserted affirmative claims against PQPR, there is still no basis to recharacterize the PQPR Claim to equity. Count V of the FSS Complaint does not seek recharacterization, and Movants certainly cannot obtain summary judgment for relief no one has requested. FSS Complaint at ¶¶ 75-81.

**C.    Fact issues exist that preclude judgment as a matter of law.**

*(i)    Relevant Factual Background*

10. Since at least 2014, PQPR and FSS have been separate companies, with separate sets of creditors, and separate books and records. PQPR is an insider but was controlled by separate management from FSS. While there is some commonality in the ownership, the companies are not the same.

11. PQPR purchased and paid for product from third parties. That product was marketed by FSS which then owed (and still owes) funds to PQPR. The transactions between PQPR and FSS were recorded contemporaneously. While FSS successfully sold the products, it fell behind in paying PQPR. The debt owed by FSS to PQPR was reviewed by an outside accountant in 2020, and the amount shown as owing by FSS to PQPR (on each entity's books) was affirmed. The debt owing to PQPR was documented in two separate notes (the "Notes")  and secured by a grant of a security interest in virtually all property of FSS (the "Security Agreement"). At that time, PQPR was virtually the sole supplier to FSS. PQPR was unwilling to continue to advance credit to FSS absent the signing of the Notes and Security Agreement.

12. Subsequent to execution of the Notes and Security Agreement, FSS continued to incur additional debt to PQPR. PQPR continued to purchase product and to sell such product to FSS only because of the existence of the security agreement.

### *(ii) Movant bears the burden to establish there is no genuine dispute as to any material fact.*

13. Judge Isgur, in *In re ATP Oil & Gas Corp.*, citing Fifth Circuit precedent, summarized a movant's burden when seeking summary judgment on a recharacterization claim:

> A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. … A court views the facts and evidence in the light most favorable to the non-moving party at all times. The Court need consider only the cited materials, but it may consider other materials in the record. The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis.

*In re ATP Oil & Gas Corp.*, 497 B.R. 238, 247 (Bankr. S.D. Tex. 2013) (internal citations omitted).

14. The test for recharacterization "a highly fact-dependent inquiry that will vary in application from case to case." *In re SIAG Aerisyn, LLC*, No. 12-11705, 2014 WL 5595113, at *9 (Bankr. E.D. Tenn. Nov. 3, 2014), quoting *Fairchild Dornier GMBH v. Official Committee of Unsecured Creditors (In re Official Committee of Unsecured Creditors for Dornier Aviation),* 453 F.3d 225, 234 (4th Cir.2006). Recharacterization requires a case-by-case fact-intensive analysis as to the parties' intent. *In re Broadstripe, LLC,* 444 B.R. 51 (Bankr. D. Del. 2010).

### *(iii) There are genuine issues of fact the preclude summary judgment for recharacterization.*

15. The affidavits of Robert Roe, attached as <u>Exhibit A,</u> and David Jones, attached as <u>Exhibit B</u>, provides some evidence that the PQPR Claim is debt, not equity, sufficient to defeat the

Motion.[6] The Notes and Security Agreement unambiguously characterize the transactions as debt owed by FSS to PQPR. This is some evidence that the PQPR Claim is debt, not equity. An independent, outside accountant reviewed PQPR's and FSS's books and determined the debt existed and was valid. This is some evidence that the PQPR Claim is debt, not equity. David Jones, the manager of PQPR, expressly contends the PQPR Claim is debt and that was always the intent of PQPR and FSS. This is some evidence that the PQPR Claim is debt, not equity.

16. PQPR is owned by JLJR Holdings LLC and PLJR Holdings LLC, which are owned by Alex Jones, David Jones, and Carol Jones (wife of Dr. Jones/mother of Alex Jones). Thus, PQPR has not contested the allegation it is an insider of FSS. However, PQPR, JLJR, PLJR, Dr. Jones, and Carol Jones do not own any interests in FSS, and Alex Jones does not own a direct interest in PQPR.

17. While true that, at times, PQPR officed at FSS and used the same bookkeeper, PQPR paid FSS for these amenities. FSS charged PQPR for advertising, fulfillment, and a monthly administration charge, which was calculated as a pro rata share of FSS's overhead attributable to PQPR. These factors have never been the sole basis for recharacterization. This theory by the Connecticut plaintiffs ignores virtually all aspects of Texas corporate law. The fact is that PQPR and FSS always maintained separate books, separate creditors, and separate ownership structures. The entities never represented themselves to creditors as the same entity. Tellingly, the Connecticut plaintiffs cannot find any creditor who maintains to the contrary. There is absolutely no basis for what is essentially a de facto alter ego claim.

18. The PQPR-FSS relationship did not start out as a "lending arrangement." PQPR had no intention of FSS accruing debt by failing to turnover sales proceeds it collected on PQPR's

---

[6] Without specifically referencing the exhibits, the factual statements contained in this section are supported by the Roe Affidavit (Exhibit A) and/or the Jones Affidavits (Exhibit B) and the exhibits attached thereto.

behalf. The so-called "lending arrangement" only materialized after FSS converted for its benefit the funds collected but not paid to PQPR. In order to protect itself, PQPR demanded the existing debt be formally documented by the Notes. However, there were indicia of a debt – the debt owed to PQPR by FSS was recorded simultaneously on the books of both entities. Movants present no evidence to the contrary.

19. When the Notes were executed, they included all necessary formalities, including an interest rate, maturity date, and repayment terms. The very existence of the Notes themselves is sufficient to establish a genuine issue of fact sufficient to preclude summary judgment in favor of Movants. *In re SIAG,* 2014 WL 5595113, at *9. In *SSAB*, the trustee sought summary judgment on its recharacterization claim based on, among other factors, the fact that the note was not created until after the first advances were made to the debtor. The court agreed that several facts raised doubt as to whether the note was truly a note, but held that the existence of the note itself established a fact issue. *Id*.

20. Movants argue that the fact PQPR continued to "lend" to FSS without meaningful repayment is conclusive evidence PQPR Claim is equity. Again, PQPR did not intend to lend FSS funds – it intended to receive the sales proceeds as agreed. PQPR continued to fulfill orders, and FSS continued to collect and wrongfully convert PQPR's funds for its own use. PQPR continued to supply the goods because that was its business. It continued to expect FSS to perform. Eventually, in accordance with reasonable business practices, it demanded FSS execute the Notes in order to ensure repayment of the unpaid proceeds FSS had collected over the years.

21. Furthermore, repayment of the PQPR debt was not contingent on the future success of FSS. The amounts were due to PQPR when the products were sold. The amounts evidenced

by the Notes were amounts resulting from the sale of PQPR's products and should have been paid immediately. The "success" had already occurred.

### III.   CONCLUSION AND PRAYER

22. Movants' Motion should be denied. Movants seek summary judgment only on Count V of the FSS Complaint, which simply requests the PQPR Claim be disallowed under Bankruptcy Code § 502(b) without specifying the basis for disallowance or requesting recharacterization. At the most basic level, the Court cannot grant summary judgment to disallow a claim against the FSS bankruptcy estate that ceased to exist when the FSS Bankruptcy was dismissed.

23. Also, as a fundamental procedural failure, Movants did not file a pleading seeking affirmative relief and did not adopt the FSS Complaint. Therefore, Movants have no live cause of action for recharacterization. Thus, there is no claim for which summary judgment is an available outcome.

24. Finally, the Notes and Security Agreement containing material terms, the contemporaneous QuickBooks entries documenting the PQPR debt, the Affidavits of Robert Roe and David Jones, and the existence of other indica of a true debt are sufficient evidence to establish a fact issue sufficient to defeat Movant's Motion.

25. For the reasons stated herein, Defendants request that the Court deny the Connecticut Families' Motion for Summary Judgment, and grant such other and further relief, both general and special, at law and in equity, to which they may be justly entitled. Alternatively, if the Court determines above-described jurisdictional and procedural issues are not fatal to the Movants' Motion, PQPR respectfully requests permission to supplement this response to the Motion with further evidence, if needed.

Filed:  July 16, 2024

Respectfully submitted,

By: /s/ Stephen W. Lemmon
Texas Bar No. 12194500
STREUSAND, LANDON, OZBURN & LEMMON, LLP
1801 S. Mopac Expressway, Ste. 320
Austin, Texas 78746
Telephone: (512) 236-9900
Facsimile: (512) 236-9904
lemmon@slollp.com

ATTORNEYS FOR DEFENDANTS PQPR HOLDINGS LIMITED LLC, JLJR HOLDINGS, LLC, AND PLJR HOLDINGS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served on this 16th day of July 2024, on counsel for the Debtor, the Debtor, and all parties registered to receive electronic notification via this Court's CM/ECF system.

/s/ Stephen W. Lemmon
Stephen W. Lemmon